UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CEDRIC CHEELEY, § § *Plaintiff,* § § v. § § JESSE RODRIGUEZ et al., § § *Defendants.* § § | Civil Action No. 3:24-CV-0862-X |

### **MEMORANDUM OPINION AND ORDER**

Cedric Cheeley filed suit against the City of Dallas (the City) and five individual police officers in this Court. He argues that a City policy led to the violation of his constitutional rights by excessive force from the officers. The City filed a motion to dismiss, which the Court now considers. (Doc. 21). The officers did not move to dismiss Cheeley's claims, and the City does not dispute whether the officers used excessive force. The City's motion considers only whether a city policy caused a constitutional violation.

Having considered the parties' arguments and the applicable law, the Court **GRANTS** the City's motion and **DISMISSES WITHOUT PREJUDICE** Cheeley's claims against the City. Cheeley may replead within twenty-eight days of this Order, but only to cure the defects the Court identified.

### I. Background

On a spring night in 2022, Cedric Cheeley visited a bar and restaurant called Afrika Fusion near his home. Officers from the Dallas Police Department (DPD) were

1

in the area responding to a call about an active shooter on foot. As Cheeley left the bar, he "attempted to engage in small talk" with Officer Jonmatthew Martinez, but Officer Martinez "did not extend any professional courtesy."[1] Shortly thereafter, Officer Martinez told Cheeley he was going to arrest him for public intoxication, to which Cheeley replied he was not intoxicated. When Cheeley tried to leave, Officer Martinez detained him, and other DPD officers—defendants Jesse Rodriguez, Adnan Shah, and Randy Rhoden (together with Martinez, the "Defendant Officers")—got involved to help Officer Martinez arrest Cheeley.

Cheeley says he informed the officers he had pins in his hips from surgery and could not get in the back of the squad car with his hands cuffed behind his back due to this condition combined with his height. He requested a van with more room, but the officers handcuffed him, picked him up, and put him in the car. Cheeley claims he was unable to sit comfortably, so he laid down and stuck his feet out the open rear window "so that he could fit in the backseat without further aggravating his hip injury."[2] The officers tried to push Cheeley's feet back in the car, and Cheeley alleges that, without warning, Officer Martinez began striking his feet with his police baton.

The other officers stood by and watched Officer Martinez strike Cheeley's feet with his baton 133 times, causing nerve damage. Finally, the officers closed the car door and left Cheeley's injured feet hanging out the rear passenger window as Officers Shah and Rhoden drove him to the police station.

---

[1] Doc. 20 at 4.
[2] Doc. 20 at 5.

After this incident, the DPD conducted an internal investigation and concluded that Officer Martinez used unnecessary and/or inappropriate force against Cheeley, failed to take proper action as a supervisor when he allowed Cheeley to be transported improperly, and failed to complete the proper report at the end of his shift. The DPD issued a written reprimand to Officer Martinez for his conduct.

## II.   Legal Standard

Federal Rule of Civil Procedure 8 requires a pleading to state "a short and plain statement of the claim showing that the pleader is entitled to relief."[3] The pleading standard does not require detailed factual allegations, but "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice."[4] For a complaint to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[5] A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[6] For the purposes of a motion to dismiss, "the court accepts

---

[3] Fed. R. Civ. P. 8(a)(2).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Id.* (cleaned up).

[6] *Id.*

all well-pleaded facts as true and draws all reasonable inferences in favor of the nonmoving party."[7]

### III.   Analysis

Cheeley contends the City is liable for violating his Fourth Amendment rights by failing to train the Defendant Officers, failing to supervise them, failing to discipline them, and ratifying their unconstitutional conduct.

A municipality can be liable under section 1983 when its official policies caused constitutional violations.[8]  This is referred to as *Monell* liability, named after the Supreme Court case *Monell v. Department of Social Services*.[9]  To bring a *Monell* claim, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[10]  This can be a difficult claim to establish and "[c]ourts in the Fifth Circuit routinely dismiss section 1983 municipal lawsuits based on failure to identify a pattern of similar unconstitutional behavior at the pleading stage."[11]

---

[7] *Winder v. Gallardo*, 118 F.4th 638, 643 (5th Cir. 2024) (cleaned up) (relying on bodycam footage when the complaint conflicts with the video and considering the footage even when plaintiffs did not attach it to their pleadings but merely referenced it).

[8] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).

[9] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[10] *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017).

[11] *Monacelli v. City of Dallas*, No. 3:21-CV-2649-L, 2022 WL 4668054, at *8 (N.D. Tex. Sept. 30, 2022) (Lindsay, J.) ("*See, e.g., Peña* [*v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)] (upholding dismissal of pleadings where Plaintiff failed to identify pattern); *Self v. City of Mansfield, Tex.*, 369 F. Supp. 3d 684, 702-03 (N.D. Tex. 2019) (Fish, J.) (dismissing plaintiff's complaint after finding, among other things, no alleged 'pattern of repeated constitutional violations' or 'evidence of persistent, repeated, and constant violations of constitutional rights by virtue of this alleged failure to train.'); *Harvey v. Montgomery Cnty., Tex.*, 881 F. Supp. 2d 785, 798 (S.D. Tex. 2012) (dismissing First Amendment claims for failure to allege a pattern of similar violations); *Pinedo v. City of Dallas, Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) (Fitzwater, J.) ('To establish a

## A. Official Policy

First, Cheeley must establish the existence of an official policy for which the City is responsible. A policy can be "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[12] In some circumstances, a municipality can be liable for a single decision by a policymaker, but this "'single incident exception' is extremely narrow."[13] It "gives rise to municipal liability only if the municipal actor is a final policymaker."[14]

"To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."[15]

### 1. Custom

Cheeley does not allege the City had any unconstitutional written policies, but unwritten custom can suffice for *Monell* liability.[16] To go this route, a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case."[17] The abuses Cheeley pleads draw on theories of failure to supervise and failure to

---

custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) a pattern of abuses that transcends the error made in a single case." (cleaned up)).

[12] *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (cleaned up).

[13] *Valle*, 613 F.3d at 542.

[14] *Id.*

[15] *Peña*, 879 F.3d at 622 (cleaned up).

[16] *See Connick*, 563 U.S. at 61 (cleaned up).

[17] *Pinedo*, 2015 WL 5021393, at *5 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001)).

discipline. Claims framed as failure to train, supervise, or discipline are all analyzed the same.[18]

>These theories require
>
>a plaintiff to prove that 1) the [City] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.[19]

"[T]he standard for municipal fault is a stringent one, [so] a pattern of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference."[20]

Cheeley attempts to establish such a pattern, but his pleadings are fatally conclusory and unspecific. He states broadly that the City has "a history of refusing to investigate officers for using excessive force," and that "sham investigations" are proof of this.[21] But he offers no factual support for the assertion that the investigations were insufficient.

Cheeley also quotes from a Dallas Morning News article that summarizes the behavior of a particular officer against whom numerous complaints were filed.[22] Yet under Fifth Circuit precedent in *Verastique v. City of Dallas*, summarizing complaints filed against police officers without specifying the particulars of the incidents is

---

[18] *E.G. v. Bond*, No. 1:16-CV-068-C, 2017 WL 129019, at *3 (N.D. Tex. Jan. 13, 2017) (Cummings, J.) (collecting cases).

[19] *Peña*, 879 F.3d at 623 (cleaned up).

[20] *Id.* (cleaned up).

[21] Doc. 20, ¶ 52.

[22] Miles Moffeit et al., *Deadly Trajectory*, Dallas Morning News (July 11, 2023), https://interactives.dallasnews.com/2023/black-and-blue/inside-dallas-police-investigation-into-officer-christopher-hess-streak-of-police-brutality.html [https://perma.cc/EDM7-9QLW].

6

insufficient to establish a policy of custom for *Monell* liability.[23]  In *Verastique*, the court rejected the plaintiffs' attempt to establish a custom because the pleadings were "devoid of critical facts" when outlining the past incidents, such as "[w]hat prompted the encounters" or whether the individuals threatened the officers with harm or resisted arrest.[24]  The Fifth Circuit went on to point out further differences such as the fact that one cited incident dealt with an officer choking an individual (but the plaintiffs before the court never asserted they were choked), that individuals in two past incidents were stopped in car-related circumstances (but the plaintiffs before the court were on foot), and that one past incident concerned the violent arrest of a man for public intoxication (but the plaintiffs before the court did not claim to be intoxicated).[25]  Because of these relatively minute differences, the court decides the "incidents described in the complaint lack similarity and specificity and do not point to the specific violation in question."[26]

Under this exacting standard, Cheeley fails to establish a customary failure to supervise or discipline DPD officers.  Even incorporating the Dallas Morning News's article, no past incident is substantially similar to Cheeley's allegations against the Defendant Officers.  None of them concerns an officer using force with a non-lethal weapon to try and force a resisting individual into a squad car.  None of them deals

---

[23] *Verastique v. City of Dallas*, 106 F.4th 427, 432–33 (5th Cir. 2024).

[24] *Id.* at 432.

[25] *Id.* at 433.

[26] *Id.*

7

with officers forcing an individual into a police vehicle at all. Therefore, Cheeley has not pled a pattern of custom sufficient to establish a policy.

### 2. Ratification

As an alternative to establishing a pattern that constitutes policy, Cheeley claims the City ratified the Defendant Officers' conduct, which counts as policy. Indeed, if "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."[27] But the theory of ratification is "limited to extreme factual situations."[28] This prevents it from collapsing into respondeat superior liability, which does not apply to municipalities under *Monell*.[29]

The final policymaker for the City of Dallas is the city council.[30] So "to show that the [C]ity of Dallas acted unconstitutionally, [Cheeley] must show that the city council promulgated or ratified an unconstitutional policy."[31] And if a claim is based on custom or widespread practice rather than written policy, the "governing body of

---

[27] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

[28] *Street Preachers F'ship v. Town of Columbia*, 591 F.3d 747, 754 (5th Cir. 2009) (cleaned up).

[29] *See Monell*, 436 U.S. at 690; *Praprotnik*, 485 U.S. at 126.

[30] *E.g.*, *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016) (holding the plaintiff sufficiently pled that the Dallas city council promulgated the policy that caused his injury); *Monacelli*, 2022 WL 4668054, at *9 ("[T]he court concludes as a matter of law that former [Dallas police chief] is not a final policymaker for the City with respect to the official policies or customs alleged in Plaintiff's § 1983 claims."); *XTC Cabaret (Dallas), Inc. v. City of Dallas*, 734 F. Supp. 3d 569, 580 (N.D. Tex. 2024) (Boyle, J.) (analyzing whether DPD's actions were attributable to city council).

[31] *Groden*, 826 F.3d at 286.

the municipality or [] an official to whom that body ha[s] delegated policy-making authority" must have actual or constructive knowledge of the custom.[32]

Cheeley does allege that the Dallas chief of police, mayor, and city council all had knowledge of the policy that caused Cheeley's injuries, though he does not plead any facts that suggest why the city council would have knowledge of the Defendant Officers' actions. Yet even assuming the city council had knowledge of the incident or that DPD Chief Garcia was an authorized policymaker for *Monell* purposes, Cheeley fails to establish a ratification claim.

Cheeley contends that the City's failure "to punish the Defendant Officers or to make any reasonable attempt to implement meaningful changes" constitutes ratification of their conduct.[33] He cites *Grandstaff v. City of Borger* for the proposition that policy can be inferred when a municipality makes "no reprimands, no discharges, and no admissions of error" after "incompetent and catastrophic" police actions, even without a pattern of such conduct.[34]

But Cheeley's reliance on *Grandstaff* is improper. Not only has *Grandstaff* "not enjoyed wide application in our circuit,"[35] but the DPD *did* reprimand Officer Martinez here. As Cheeley pled, the City investigated and reprimanded Officer Martinez, both as the actor who struck Cheeley and as the supervisor who permitted

---

[32] *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), *aff'd in part en banc*, 739 F.2d 993 (5th Cir. 1984).

[33] Doc. 20 at 16, ¶ 56.

[34] *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985).

[35] *E.g.*, *Barkley v. Dillard Dept. Stores, Inc.*, 277 F. App'x 406, 413 (5th Cir. 2008) (recognizing limitation on *Grandstaff* ratification theory to "extreme factual situations").

all the Defendant Officers' conduct.[36] Cheeley may be unsatisfied with the discipline Officer Martinez received, but it certainly does not constitute ratification.

For these reasons, Cheeley fails to establish *Monell* liability against the City under a theory of ratification.

## IV.   Conclusion

For the reasons stated above, the Court **GRANTS** the City's motion to dismiss. (Doc. 21). The Court **DISMISSES WITHOUT PREJUDICE** Cheeley's claims against the City of Dallas for failure to state a claim under 12(b)(6). However, Cheeley's claims against the Defendant Officers remain.

Within twenty-eight days of this Order, Cheeley may replead. But Cheeley cannot expand his claims or add parties; he may only cure the defects the Court identified in this Order.

**IT IS SO ORDERED** this 26th day of February, 2025.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[36] Second Am. Compl., Doc. 20, at 6–7.

10